# Richmond

## SANITARY GROCERY COMPANY, INCORPORATED, v. STERLING W. WRIGHT.

March 24, 1932.

Present, Campbell, C. J., and Holt, Epes, Hudgins and Browning, JJ.

The opinion states the case.

*Aubrey R. Bowles, Jr.,* and *McGuire, Riely & Eggleston,* for the plaintiff in error.

*Alexander H. Sands,* for the defendant in error.

CAMPBELL, C. J., delivered the opinion of the court.

This is a writ of error to a judgment in favor of Sterling W. Wright, plaintiff, against Sanitary Grocery Company, Incorporated, for damages resulting from the breach of a contract for the sale of personal property by Wright to the defendant.

In July, 1928, Wright was engaged in the retail grocery business at No. 2101 Fairmount avenue, in the city of Richmond. The building in which he conducted business was owned by R. H. Stoltz. Wright's written lease of the building was for one year, beginning on the 7th day of June, 1928, and it contained the proviso, "that a written notice of three months shall be given by the said lessee should he desire to vacate said premises at the termination of this lease, viz: June 6, 1929, and should the said lessor desire possession a like notice shall be required * * *."

The defendant is a foreign corporation, with headquarters in the city of Washington, D. C., but is duly licensed under the laws of Virginia to do business in the State. In July, 1928, it was operating a number of stores in Richmond. Desiring to expand its operations, it was seeking suitable locations for additional stores. It was during this period of investigation of suitable locations that Howard Gerhard, who was at the head of defendant's Richmond operations, came in contact with plaintiff, and, according to the contention of plaintiff, the defendant agreed to purchase the store fixtures at the price of $1,750.00, upon the surrender

by plaintiff to defendant of the existing lease on the store, and with the promise of plaintiff's assistance in securing from Stoltz an extended lease for defendant. Defendant refused to comply with the terms of the alleged contract, and thereupon plaintiff brought this action for damages by notice of motion.

The notice of motion alleges that "* * * by virtue of a certain contract entered into between you and the undersigned in which you agreed that if the undersigned would surrender his lease and assist you in making satisfactory arrangements with R. H. Stoltz, the owner of the building known as 2101 Fairmount avenue, Richmond, Virginia, to secure a lease thereon, that you would purchase from the undersigned, at the sum of $1,750.00, his fixtures contained in said store; that the undersigned relying upon your good faith co-operated with you to the fullest extent in bringing about the lease of this property to you, removing the only condition interposed by you for the purchase of said fixtures; that notwithstanding this you have steadily refused, and still do refuse, to purchase said fixtures as aforesaid; that under the terms of the said agreement you were to pay the undersigned the sum of $1,750.00 for his said fixtures and that by reason of the breach by you of your said contract the undersigned has been damaged in the sum of $1,000.00 by reason of the fact that the market value of said fixtures, and the most that he can realize for same, is the sum of $750.00."

The defendant joined issue by filing the following grounds of defense:

"1. The defendant denies any contract between the plaintiff and the defendant in the manner alleged in the notice of motion.

"2. Even if there had been a contract, as alleged in the notice of motion, the consideration for the same has failed and the defendant was, therefore, not bound to comply with its part of the agreement.

"3. The defendant is not liable to the plaintiff in any manner for any sum whatever as alleged in the notice of motion."

Trial was had before a jury, which resulted in a verdict for plaintiff in the sum of $600.00. The defendant moved the court to set aside the verdict on the following grounds:

"1. The verdict was contrary to the law and the evidence.

"2. For misdirection of the jury in giving improper instructions offered by the defendant.

"3. For errors committed during the trial and the admission and exclusion of testimony."

The court refused to set aside the verdict, and entered judgment for the plaintiff.

The assignments of error are:

"1. The trial court erred in overruling the defendant's motion to set aside the verdict of the jury and to grant a new trial or enter up judgment for the defendant, and in entering judgment for the plaintiff.

"2. The trial court erred in refusing to consider the defendant's defense of failure of consideration.

"3. The trial court erred in refusing to consider the defendant's defense that it was not bound by the alleged action of its agent, Gerhard, who was shown by the uncontradicted evidence to have been without authority to do the acts alleged.

"4. The trial court erred in the giving and refusing of instructions and in modifying instructions offered as set out in bill of exceptions No. 2.

"5. The trial court erred in the admission of testimony as set out in bill of exceptions No. 4."

█ In support of the first assignment of error it is urged upon us that there is no evidence to support a valid contract binding upon the defendant. Two reasons are assigned in support of the contention, viz: That the evidence shows that no agreement for the purchase of the store fixtures was

in fact made; and that, if made, it was by an unauthorized agent of defendant.

As to the first contention, the evidence is in conflict. Wright testified that upon his offer to sell, Gerhard stated, "we will take your store and fixtures providing you get us a longer lease; we cannot afford to buy your stuff with only nine months remaining of the period;" that he was instrumental in securing an extension of the lease from Stoltz; that he was ready and able to deliver the fixtures; that defendant breached the contract. On the other hand, Gerhard denies *in toto* the testimony of Wright. Stoltz denied that Wright was the procurer of the lease to defendant. The jury resolved the conflict of evidence in favor of the plaintiff, and their finding is conclusive of that question.

The second contention, that the contract (if entered into) was made by an unauthorized agent, is untenable. It is true that Gerhard and other officers of the defendant testified that Gerhard was without authority to make the contract. However, issues in a case are made by the pleadings, not by the testimony of witnesses. When we look to the grounds of defense filed by defendant, it is patent that defendant did not rely on the lack of authority of Gerhard to make the contract. In the petition for a writ of error it is conceded that this defense was not specifically relied on. There we read: "It will be noted that this defense is not specifically, but is generally and sufficiently, stated in the grounds of defense filed, and could not be specifically stated, because the notice of motion did not allege by what agent of Sanitary the contract was claimed to have been made."

If defendant had deemed it necessary to ascertain the agent with whom the alleged contract was made, a bill of particulars would have procured the desired information. The plaintiff had a right to go to trial on the issues made by the pleadings and is not to be restricted to the testimony

of witnesses. That the question was not relied on in the lower court is further shown when we advert to the grounds on which the motion to set aside the verdict was based. There is not the slightest intimation in the motion to set aside the verdict that defendant relied on the alleged undisputed evidence that Gerhard was without authority to contract on behalf of defendant. The only intimation we find in the record that this defense was relied on is found in an objection to instruction No. 1, offered by plaintiff. The record merely shows that defendant objected to the instruction on the ground that it "fails to consider the scope of authority of the agent of the defendant referred to therein." It is significant that no instruction was asked for by defendant on this specific point. It seems clear to us that this defense was not relied on in the lower court, and consequently it cannot be relied on in this court.

A consideration of the second and third assignments of error is embraced in the foregoing discussion. These assignments are without merit.

The fourth assignment of error is that the court erred in the giving of instructions offered by the plaintiff, in refusing instructions offered by the defendant and in modifying instructions offered by the defendant.

The following are the instructions given to the jury:

"The court instructs the jury that if they believe from the evidence that on or about the . . . day of July, 1928, an agent of the defendant company agreed that if the plaintiff would use his best efforts to secure an extension or a satisfactory lease for them with the owner of the property at that time rented by the plaintiff, known as 2101 Fairmount avenue, and that he, the plaintiff, would further agree to give up his unexpired lease thereon upon the request and demand of the defendant, that then the defendant, on its part, would buy the fixtures and truck so used by the plaintiff in connection with his business at the

price of $1,750.00; and if the jury further believe that the said plaintiff did assist the said defendant in the matter as stated, and offered to release and yield his unexpired lease to the defendant, then the jury are instructed that such agreement on the part of the plaintiff and defendant constituted a valid and enforceable contract binding upon both the plaintiff and defendant; and if the jury further believe that after having so made said agreement the said defendant, through its agents, declined to carry the same out, and refused to buy said property from the plaintiff at the price agreed, it, thereupon, became liable to the plaintiff for such sum in damages as he suffered by reason thereof. And the court tells the jury that the amount of loss or damages to the plaintiff, if any, they believe that he suffered, would be the difference between the contract price at which the goods were to be taken and the market price of the same, as of the time when the declination to take the same occurred. If the jury believe that the plaintiff is entitled to recover under all facts and circumstances of this case they shall find a verdict for him in such amount as represents the difference between the contract price and the then market price of said personal property.

"The court instructs the jury that the fact that the plaintiff held possession after the expiration of his current lease would not disentitle the plaintiff to recover in this case, if the jury believe that he is entitled to recover under the facts introduced in evidence and under the law of the case as given by the court in other instructions.

"The court instructs the jury that if they believe from a preponderance of the evidence that the plaintiff, Wright, offered to sell his fixtures to the Sanitary Grocery Company, but also believe from the evidence that the Sanitary Grocery Company never accepted said offer and never agreed to buy, then the jury must find for the defendant, Sanitary Grocery Company.

"The court instructs the jury that the burden of proving his case rests at all times upon the plaintiff, Sterling W. Wright, and that, unless he does so prove his case by a preponderance of the evidence, the jury must find for the defendant Sanitary Grocery Company.

"The court instructs the jury that they must find for the defendant, unless they believe from a preponderance of the evidence:

"(1) That the contract as alleged in the notice of motion was made, namely, that if Wright would surrender his lease and assist the Sanitary Grocery Company in making a lease with the owner of 2101 Fairmount avenue, the Sanitary Grocery Company would purchase from Wright his store fixtures for $1,750.00.

"(2) That the plaintiff performed all of his obligations under the contract claimed, namely, that he surrendered, *or was willing and able to surrender,* his own lease and assisted the Sanitary Grocery Company in securing a lease from R. H. Stoltz, the owner of the store; and, further, that the Sanitary Company failed to purchase said fixtures in violation of the contract claimed.

"(3) That the alleged breach of the contract, claimed by the plaintiff to have been made, resulted in actual damages to the plaintiff."

The objection to the instructions given on behalf of the plaintiff are so numerous that it would unduly prolong this opinion to attempt to discuss them in detail. Concretely stated, the gist of the objection is that the court erroneously instructed the jury as to the measure of damages. The plaintiff, proceeding upon the theory that the true rule for the measure of damages was the difference between the contract price claimed and the market value of the personal property at the time and place of the breach of the contract, introduced George B. Oliver, a dealer for years in used personal property, who testified that the fair market.

value of the fixtures was between $530.00 and $550.00 at the time of the alleged breach of the contract.

The contention of the defendant as to measure of damages, if any, is embodied in this instruction which the court refused to give: "The court instructs the jury that, if they find for the plaintiff upon the evidence and instructions in this case, the measure of damages to the plaintiff is the difference between the price named in the contract claimed and the value of the fixtures to the plaintiff for use in his said store for his purpose in carrying on his business."

While conceding that the rule adopted by the court is applicable to ordinary cases involving a breach of contract for the sale of personal property, it is urged by the defendant that the present case is an exception to the general rule, for the reason that plaintiff did not surrender his lease nor deliver possession of the fixtures. Plaintiff testified that he proffered the fixtures, which were refused, and that he was willing to surrender his lease upon defendant's compliance with the contract. It is claimed by plaintiff that at the time of the alleged breach of contract defendant had secured from Stoltz a contract of lease for the storeroom for a period of two years. The evidence as to the true date of the latter contract is conflicting, but we think there is sufficient evidence to support the claim of plaintiff. Due to the fact that Stoltz did not give the required notice to plaintiff to vacate the premises, he exercised his right of extension, and the lease to defendant never became effective.

In our opinion, the general rule as to the measure of damages is applicable to the case at bar, and the trial court correctly instructed the jury.

In 24 R. C. L., page 116, the general rule is thus stated: "As a general rule the measure of damages recoverable by the seller for the buyer's breach of the contract is the difference between the price agreed to be paid and the market value of the property. The principle on which this

rule rests is that of an indemnification of the injured party for the injury which he has sustained, and, in ordinary cases, the value in the market on the day forms the readiest and most direct method of ascertaining the measure of this indemnity. If the article is bought and sold in the market, the market price shows what pecuniary sum it would take to put the plaintiff in as good a position as if the contract had been performed."

In *James River Lumber Co., Inc.* v. *Smith Bros.*, 135 Va. 406, 116 S. E. 241, 244, it is said: "Undoubtedly the general rule is that the measure of damage for the breach of a contract of sale of personal property by the buyer is the difference between the contract price and the market price at the time and place of delivery; but this does not mean that the time of delivery fixed in the original contract may not be extended by consent of the parties, and such consent may be shown either by proof of an express contract, or by conduct and acquiescence."

In Elliott on Contracts, volume 5, page 1239, we read: "The measure of damages in an action by the seller for non-acceptance is the loss directly and naturally resulting, in the ordinary course of events, from the buyer's breach of contract. Where there is an available market for the goods in question the measure of damages is *prima facie*, or in the absence of special circumstances showing greater damage, to be ascertained by the difference between the contract-price and the market or current price at the time or times when the goods ought to have been accepted, or, if no time was fixed for acceptance, then at the time of the refusal to accept. If there is no available market at the place, evidence of the market value at the nearest or controlling market is usually admissible as tending to show the real value at the time and place in question. And if there is no market value from which the question can be determined, it does not necessarily follow that the goods

are worthless. The seller is still entitled to the amount of damage, if any, that he is shown to have sustained by the breach."

The view of the trial court that it was not incumbent on the plaintiff to resell the fixtures is supported by the note following the case of *Kahn* v. *Schoen Silk Corp.*, 147 Md. 516, 128 Atl. 359, found in 44 A. L. R. 296. There we read: "Where the measure of damages sought to be recovered is the difference between the contract price and the market value at the time when the buyer should have accepted it, it is clear that no duty rests upon the seller to resell. In this regard it has been held that a resale of the property following the refusal of the buyer to accept it is not necessary to fix the market price at the time of the breach, although it may be made in order to ascertain the seller's damage."

Our conclusion upon the whole case is that the parties have had one fair trial, that substantial justice has been reached, and that the judgment of the trial court must be affirmed.

*Affirmed.*

HUDGINS, J., dissenting.

It is with regret that I am unable to agree with the conclusions reached by the other members of the court in the above opinion. My reasons for dissent are briefly stated thus:

The plaintiff, in his notice of motion, alleged that the defendant made a contract with him; the defendant, in its grounds of defense, states that it "denies any contract between the plaintiff and defendant in the manner alleged in the notice of motion." The validity of the alleged contract was thus made a clear-cut issue by the pleadings.

It then became the duty of the plaintiff to prove, by a preponderance of the evidence, that the agent with whom

he dealt had either the express or implied authority to bind the defendant corporation, or that the unauthorized acts of the agent were duly ratified. The plaintiff testified that all his negotiations were had with one Howard Gerhard, who was the secretary of the defendant corporation, and that the contract was made with him. The plaintiff then rested. Thereupon, the defendant introduced several witnesses who testified that Gerhard had no authority to make any such contract, and Gerhard stated that he "told him (the plaintiff) that I had absolutely no authority whatsoever to pass on anything of that nature; that my authority was limited; that I had never made any leases or any agreements, and under the charter of my company I have no right to obligate our company." By this and other like evidence the defendant met and overcame the inference from plaintiff's testimony that Gerhard was authorized to act for defendant. This evidence was not denied, and stands in the record as an established fact. No attempt was made to show that any agreement Gerhard may have made with the plaintiff was ratified by the defendant, or that the defendant's course of dealing with plaintiff was such as to estop it from repudiating the unauthorized act of Gerhard.

Such being the evidence, the defendant was well within its right when it raised the objection copied in the majority opinion to plaintiff's instruction. The jury might have believed all the hypothetical statements contained therein, and still the plaintiff would not be entitled to recover unless they believed the agent had the express or implied authority to make the contract. Because the defendant might have requested the court to give an instruction dealing with the scope of the agent's authority and did not, does not cure an erroneous instruction which purported to embrace the plaintiff's whole case.

From what has been said it follows that in my opinion the ground of the objection was sufficiently stated in the

exception to the instruction, and that even if it were not the motion to set aside the verdict should have been sustained because the plaintiff failed to prove a case which would entitle him to recover.

I think, therefore, that the verdict of the jury should be set aside, the judgment reversed, and the case remanded.

EPES, J., concurs in this dissent.