In the Interest of JANE DOE, Born on March 3, 1962, Juvenile-Appellant

NO. 7032

MAY 2, 1980

RICHARDSON, C.J., OGATA, MENOR, LUM, NAKAMURA, JJ.

OPINION OF THE COURT BY NAKAMURA, J.

This is an appeal from a family court order revoking juvenile appellant's probation and committing her to the Ha-

waii Youth Correctional Facility for the period of her minority.

Appellant was initially adjudged a delinquent child and placed on probation by the Family Court of the First Circuit when she was thirteen years old; she remained on probation for approximately three years. The record reveals her probationary status was in jeopardy on more than a few occasions during this period because of further law violations and an apparent inability or unwillingness to conform to other terms and conditions of probation, which were amended on several occasions to accommodate her placement with relatives, in foster homes, and in private treatment facilities. Shortly before the ultimate revocation of probation, the family court decreed that she be committed to the Hawaii Youth Correctional Facility, but stayed the mittimus and authorized placement in Hale Opio, a treatment facility on Kauai, in an obvious last ditch effort to spare her confinement in the correctional facility. Appellant's sojourn on Kauai, however, was short as she was discharged from Hale Opio only two months after placement. A petition to revoke probation was thereupon filed and the court conducted a hearing where she was represented by counsel.

Appellant raises the following questions related to the revocation of her probation:

1. Whether the petition to revoke probation provided sufficient notice of the grounds for the action;

2. Whether the family court violated due process and equal protection in admitting hearsay evidence and thereby also depriving appellant of the right to confront witnesses; and

3. Whether the court breached due process by not providing appellant with a written statement setting forth its reasons for revoking probation.

Primary support for appellant's assertions that the family court's actions were constitutionally deficient when measured against applicable safeguards is sought from *Morrissey v. Brewer*, 408 U.S. 471 (1972), and *Gagnon v. Scarpelli*, 411 U.S. 778 (1973), where the United States Supreme Court held that adult parole and probation revocation proceedings are

subject to due process restraints under the Fourteenth Amendment. While we subscribe to the proposition that youthful offenders are indeed protected by the Federal and State Constitutions at all stages of family court proceedings, whether they be adjudicatory or dispositional, the record does not demonstrate that appellant's rights, under pertinent procedural standards, were prejudiced here.

Appellant's objections to the family court's actions are premised on an assumption that *Morrissey, Gagnon,* and the Fourteenth Amendment to the Constitution of the United States mandated the court's strict adherence to adult criminal procedures in all respects. This view, however, does not comport with Supreme Court decisions defining procedural due process rights of youthful offenders for "there is no automatic congruence between the procedural requirements imposed by due process in a criminal case, and those imposed by due process in juvenile cases." *In Re Winship,* 397 U.S. 358, 374 (1970); *Breed v. Jones,* 421 U.S. 519, 540 (1975); *McKeiver v. Pennsylvania,* 403 U.S. 528 (1971).

The United States Supreme Court has defined procedural due process as it applies to non-adjudicatory and adjudicatory juvenile proceedings in a series of notable decisions commencing with *Kent v. United States,* 383 U.S. 541 (1966), and *In Re Gault,* 387 U.S. 1 (1967). *Kent,* of course, requires no further examination here as we have discussed its impact on family court procedures relative to the waiver of jurisdiction over youthful offenders in prior decisions. *See In Re Dinson,* 58 Haw. 522, 574 P.2d 119 (1978); *In Re John Doe,* 61 Haw. 48, 594 P.2d 1084 (1979); *State v. Stanley,* 60 Haw. 527, 592 P.2d 422 (1979), *cert. denied,* 444 U.S. 871; *In Re John Doe I,* 50 Haw. 620, 446 P.2d 564 (1968). *Gault* established a juvenile's entitlement to adequate written notice, notification of a right to counsel, the right to confront and cross-examine witnesses, and the privilege against self-incrimination at an adjudicatory stage. *In Re Winship, supra,* addressed the issue of quantum of necessary proof in the adjudication of a child as a delinquent, the court finding guilt beyond a reasonable doubt the requisite standard. In *McKeiver v. Pennsylvania, supra,* the court held that the absence of a jury trial

was not necessarily inconsistent with due process concepts applicable to juvenile proceedings.

The Supreme Court has not chosen to mechanically transfer all procedural safeguards afforded criminal defendants under the Fourteenth Amendment to juvenile offenders. Rather, the decisions manifest a definite concern for investing relevant juvenile proceedings with due process within a humanitarian system where rehabilitation is unquestionably the primary goal, a system whose genesis may be traced to a desire "to provide a distinctive procedure and setting to deal with the problems of youth." *Breed v. Jones, supra,* 421 U.S. at 528. And the Court has clearly exercised care in not sacrificing all of the system's desirable flexibility and informality in dealing with youthful offenders to rigid concepts of due procedure governing criminal proceedings that may detrimentally affect the system and its rehabilitative objectives. However, it has concomitantly required state juvenile justice systems to scrupulously maintain standards consistent with fundamental fairness. Measured against this governing concept, the treatment accorded appellant by the family court within the pertinent fact situation was essentially fair and we affirm the order revoking probation.

I.

The petition in question alleged appellant had breached probation because she "was discharged from Hale Opio, Puhi, Kauai, for failing to abide by the rules and regulations of the latter agency, thereby being in violation of Rule 3 of her Rules of Probation and Order."[1] The family court records recite a lengthy history of individualized attention to appellant and her problems. They show extensive counselling, numerous appearances before family court judges, and frequent amendments of custody and placement orders related

---

[1] Rule 3 filed with her probationary order states: "If in placement obey all rules and regulations thereof."

to appellant, including the penultimate order staying a mittimus and authorizing placement in Hale Opio.[2] It would be difficult to imagine appellant was not fully aware of what the court expected of her thereafter. Appellant nonetheless contends she was not provided with "sufficient written notice of any violation of a condition of her probation."

Due process requires that a youthful offender whose substantial rights would be affected by a family court order revoking probation and terminating the stay of a mittimus be furnished with due notice of the contemplated action, as well as a hearing. *People v. McCants*, 17 Ill. App. 3d 151, 308 N.E.2d 151 (1974); *Smith v. Cook*, 105 Ariz. 390, 465 P.2d 370 (1970); *Franks v. State*, 498 S.W.2d 516 (Tex. Civ. App. 1973). While the petition filed by the probation officer subsequent to appellant's discharge from Hale Opio could have been more specific and allegations of rule violations particularized, we cannot conclude it did not fairly apprise her of the basis for possible adverse action by the family court. Where the court previously terminated probation, issued a mittimus to effect confinement in the correctional facility, but stayed the effectiveness of the order to permit appellant's placement in a neighbor island treatment facility, she was aware her continued liberty was dependent upon remaining there. The petition's reference to the discharge from Hale Opio because of an inability to abide by its rules was more than sufficient within the relevant factual context to inform her why her probationary status was again in jeopardy. It would be unrealistic to conclude otherwise. However, this should not be taken as approval of a practice of tersely wording motions or petitions that may possibly affect the liberty or other substantial rights of youthful offenders. While circumstances rendered a more specific petition unnecessary here, the preferred course should normally be to state grounds for possible adverse action with specificity.

---

[2] The family court records also indicate there was a specific oral warning from the judge that appellant would be committed to the Hawaii Youth Correctional Facility for the period of her minority if she were discharged from the treatment facility prior to a scheduled discharge therefrom.

## II.

Appellant claims the family court committed error by admitting a letter from a Hale Opio counsellor to her probation officer into evidence and by permitting the probation officer to testify about telephone calls related to appellant and her disciplinary problems at the Kauai facility. She avers the admission of the letter deprived her of a right to confront and cross-examine witnesses against her; she further asserts the letter was an unauthenticated document and therefore inadmissible as evidence. *Morrissey v. Brewer,* and *Gagnon v. Scarpelli,* in her opinion, compelled the rejection of both the letter and the testimony.

The admissibility of evidence at the dispositional phase of a family court proceeding involving a delinquent child is governed by HRS § 571-41 (1976), the relevant portion reading:

> In the disposition part of the hearing any relevant and material information, including that contained in a written report, study, or examination, shall be admissible, and may be relied upon to the extent of its probative value; provided, that the maker of the written report, study, or examination shall be subject to both direct and cross-examination upon demand and when he is reasonably available. The disposition shall be based only upon the admitted evidence, and findings adverse to the child as to disputed issues of fact shall be based upon a preponderance of such evidence.

The foregoing provisions are designed to enable a family court judge to receive and weigh all available information about a youthful offender in determining a rehabilitative course, subject to considerations of due procedure discussed earlier. While the relevant statute sanctions the receipt of hearsay evidence, it also gives an offender the right to demand the appearance of the author of a report or other document, which the court must heed if the author is "reasonably available." The pertinent language is, in our opinion, consistent with due procedure as decreed by *Kent, Gault,* et al., as well as with

*Morrissey v. Brewer* and *Gagnon v. Scarpelli*. The Supreme Court in *Morrissey* and *Gagnon* emphasized that parole and probation hearings should not be equated with criminal prosecutions and stated its views on parole violation hearings as follows:

> We emphasize there is no thought to equate this second stage of parole revocation to a criminal prosecution in any sense. It is a narrow inquiry; the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial.

*Morrissey v. Brewer, supra,* 408 U.S. at 489.

Appellant was given prior notice and was also afforded counsel and an opportunity to be heard. Her objection to the conduct of the hearing is that the author of a document admitted into evidence and considered by the judge was not present. Where the applicable statute permits the receipt of all relevant information at the dispositional stage of a family court proceeding, but also allows a reasonable opportunity to demand the appearance of the author of a proffered document, the statute sets forth a fair basis for the exercise of the right to confrontation. The record discloses appellant chose not to testify at the hearing and did not request that the writer of the damaging letter be produced for cross-examination. As available rights were unexercised by choice, the hearing violated neither due process, equal protection, nor the right to confront witnesses.

### III.

Appellant argues the family court failed to follow due process "by neglecting to provide a written statement of the evidence relied upon in finding that she had violated the terms and conditions of probation."

In *Kent*, the Supreme Court ruled that due process in a "critically important" proceeding mandated, among other procedural requirements, a statement of reasons supporting the decision. 383 U.S. at 560. The Court, however, further

held that the statement need not be formal nor necessarily include conventional findings of fact. 383 U.S. at 561. Following *Kent* we have in our decisions dealing with the waiver of jurisdiction ov... minors, uniformly ruled that waiver orders must be su\ ,orted by a statement of reasons but that it is unnecessary for the statement to be formal or include conventional findings of fact. *In Re John Doe I, supra; State v. Stanley, supra; In Re John Doe, supra*. Our views are partially summarized in *State v. Stanley* as follows:

> While *Kent* provides that a statement of reasons need not be formal or necessarily include conventional findings of fact, 383 U.S. at 561; *In Re Doe I*, 50 Haw. 620, 623, 446 P.2d 564, 567 (1968), "the statement should be sufficient to demonstrate that the statutory requirement of 'full investigation' has been met; and that the question has received the careful consideration of the [family court]; and it must set forth the basis for the order with sufficient specificity to permit meaningful review." *Kent, supra* at 561.

60 Haw. at 536. That a probation revocation hearing is a critically important hearing is indisputable. Thus, our inquiry here must focus on whether the court's statement demonstrates a full investigation has been conducted, whether the issues received careful consideration, and whether the basis for the order is set forth in its findings with sufficient specificity.

The order entered by the family court failed to set forth extensive findings and as in *State v. Stanley* we are compelled to read it in conjunction with the oral statements made by the court at the conclusion of the hearing and the remainder of the court records to conclude there were adequate grounds for the court's decision. When the foregoing documents are considered there is no shadow of doubt there were more than ample reasons to revoke probation and that they were stated to appellant. We therefore conclude appellant was not prejudiced by the court's failure to provide a more formal statement.

While the circumstances in this case, like those in *Stanley*, allowed a departure from a literal compliance with *Kent*

and its standards, we think the better practice for the court to follow is to state the reasons for its conclusions in writing and with a degree of specificity that would facilitate a review of its actions without further search of the record for the reasons why probation was terminated.[3] We also believe it incumbent on the family court to follow the foregoing procedure to avoid possible appearances of arbitrariness. As Justice Marshall aptly states, a statement of reasons accompanying a sentence imposed on a youthful offender serves more than a purpose of furthering review; it may also aid in rehabilitation because "[i]f reasons were articulated for the sentencing decision, an offender would be less apt to perceive his fate as being arbitrarily determined." *Dorszynski v. U.S.*, 418 U.S. 424, 456 (1974) (concurring opinion).

Affirmed.

*Calvin Fukuhara (Ronald M. Yonemoto* on the briefs), Deputy Public Defenders, for Juvenile-Appellant.

*Arthur E. Ross (J. Leo McCormick, Jr.* on the brief), Deputy Prosecuting Attorneys, for State of Hawaii.

---

[3] Our decision that orders revoking probation should include specific findings hereafter is consistent with *In Re John Doe*, 61 Haw. 167, 598 P.2d 176 (1979), where we chose to prospectively apply a stricter standard to waiver orders than that previously enunciated in *State v. Stanley*.